UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS P. LANE                                    CIVIL ACTION

VERSUS                                            NO. 25-103

BAYWOOD HOTELS, INC., *et al.*                    SECTION M (4)


**ORDER & REASONS**

Before the Court are motions to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by defendants Hilton Franchise Holding LLC ("Hilton Franchise")[1] and Hilton Worldwide Holdings Inc. ("Hilton Worldwide")[2] (together, "Hilton"). Plaintiff Thomas Lane responds in opposition to both motions,[3] and Hilton replies in further support of the motions.[4]  Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motions.

I.      **BACKGROUND**

This disability-discrimination case arises out of Lane's experience at the Hampton Inn by Hilton New Orleans French Quarter Market Area (the "Hotel") in March 2024.[5]  According to the complaint, "Lane is a qualified individual with a disability" under the Americans with Disabilities Act (the "ADA") and the Louisiana Commission on Human Rights (the "LCHR"), and requires "guide/service dog attention."[6]  Lane alleges that, when he checked into the Hotel, he was required "to pay an additional fee for his service dog and to sign in his service dog."[7]  He also alleges that,

_____

[1] R. Doc. 40.
[2] R. Doc. 41.
[3] R. Doc. 43.
[4] R. Doc. 44.
[5] R. Doc. 21 at 3.
[6] *Id.* at 2.
[7] *Id.* at 3.

the following morning, he was "accosted" by a Hotel employee "regarding his service dog" in the Hotel's breakfast area, and that "the employee continued to yell at and berate" Lane even after he explained that the dog was a service animal.[8]  Lane further alleges that he "was told [a manager] would not be present for some time" when he asked to speak with one after this incident, and that he received no response when at checkout he "reiterated his concerns about how he and his service dog were treated."[9]  Lane lastly alleges that "a claim was opened" by Hilton Franchise six days later, and, although written statements were taken from Hotel employees, "all camera footage" of the alleged events was destroyed.[10]

In November 2024, Lane brought this discrimination suit in state court under the LCHR, La. R.S. 51:2231-2241, and the ADA, 42 U.S.C. §§ 12101-12265, seeking compensatory damages, injunctive relief, costs and fees, and damages for negligent infliction of emotional distress from Hilton Hotel Employer, LLC ("Hilton Employer"), Baywood Hotels, Inc. ("Baywood"), and 501EFA Hotel, LLC ("501EFA").[11]  The case was removed to this Court in January 2025.[12]  On March 26, 2025, the Court granted Lane's motion for leave to file a second amended complaint substituting Hilton Worldwide and Hilton Franchise for Hilton Employer.[13]  After Hilton filed initial motions to dismiss for lack of personal jurisdiction,[14] Lane sought leave to file a third amended complaint containing additional jurisdictional facts,[15] which the Court granted.[16]  Hilton again moves to dismiss Lane's claims against them for lack of personal jurisdiction.[17]

---

[8] *Id.*

[9] *Id.*

[10] *Id.* at 3-4.

[11] R. Doc. 1-2.

[12] R. Doc. 1.

[13] R. Docs. 18; 20; 21.

[14] R. Docs. 26; 27.  These motions were mooted by the filing of Lane's third amended complaint.

[15] R. Doc. 33.  Aside from these jurisdictional facts, the underlying factual allegations in the second amended complaint are incorporated into the third amended complaint, which is the operative complaint.  *See* R. Doc. 35 at 3.

[16] R. Doc. 34.

[17] *Compare* R. Docs. 26; 27, *with* R. Docs. 40; 41.

## II.     PENDING MOTIONS

In Hilton Franchise's motion, it contends that this Court does not have general personal jurisdiction over it because it is a Delaware limited liability company with its principal place of business in Virginia, and Lane has not established that it is "at home" in Louisiana.[18]  Hilton Franchise further argues that Lane has not established that this Court has specific personal jurisdiction over it because he does not allege that Hilton Franchise "directed any specific conduct at Louisiana, conducted any business activities related to the claims in Louisiana, or played any role in the events underlying the alleged discrimination."[19]  Instead, says Hilton Franchise, "the only substantive allegation against [it] is that it is the franchisor of the Hotel."[20]  Hilton Franchise contends that the "standard franchisor-franchisee oversight" provisions of the franchise agreement between Hilton Franchise and 501EFA (the "Franchise Agreement"),[21] upon which Lane relies, "do not demonstrate any purposeful availment of Louisiana law" by Hilton Franchise nor "create a substantial connection to the forum state sufficient to support jurisdiction."[22]  Hilton Franchise contends that "it is well established that being a franchisor of a hotel is not enough to establish specific jurisdiction."[23]  It also argues that Lane's allegation that a Hilton Franchise representative contacted him after he complained about the Hotel employee's alleged conduct "is too vague and unsubstantiated to support purposeful availment."[24]  Finally, Hilton Franchise contends that the affidavit of James O. Smith, Assistant Secretary of Hilton Franchise and Vice President and Assistant Secretary of Hilton Worldwide,[25] establishes that Hilton Franchise "does not operate,

---

[18] R. Doc. 40-1 at 6-8.
[19] *Id.* at 8-9.
[20] *Id.* at 9.
[21] R. Doc. 35-2.
[22] R. Doc. 40-1 at 9.
[23] *Id.* (citing *Willock v. Hilton Domestic Operating Co.*, 474 F. Supp. 3d 938 (M.D. Tenn. 2020); *Campos Enters., Inc. v. Edwin K. Williams & Co.*, 964 P.2d 855 (N.M. Ct. App. 1998)).
[24] *Id.* at 9-10 (quote at 10).
[25] R. Doc. 40-2.

manage, or control or have any involvement in" the Hotel's daily operations; "does not employ, control, manage or supervise" Hotel personnel; does not own or lease the real property associated with the Hotel; and "does not control nor operate the Hotel's facilities, systems or equipment in any way."[26]

In its motion, Hilton Worldwide likewise argues that this Court lacks both general and specific personal jurisdiction over it.  It asserts that it was incorporated in Delaware and has its principal place of business in Virginia and that Lane has failed to establish that it is "at home" in Louisiana for purposes of general personal jurisdiction.[27]  Hilton Worldwide also argues that this Court has no specific personal jurisdiction over it because the third amended complaint fails to allege that it "purposefully directed any conduct at Louisiana or engaged in any activity from which [Lane]'s claims arise."[28]  It argues that Lane "does not allege that [Hilton Worldwide] is registered to do business in Louisiana, maintains an office within the state, or engages in any commercial activities purposefully directed at Louisiana," but, even if he did, "such an allegation … is insufficient to confer jurisdiction."[29]  Hilton Worldwide also relies on Smith's affidavit, which it says "dispels any claim that [it] is involved in the operation of the Hotel in any way" by establishing that it "does not operate, manage, control, or have any involvement in" the Hotel's daily operations; "does not employ, control, manage or supervise" Hotel personnel; does not own or lease the real property associated with the Hotel; and "does not control nor operate the Hotel's facilities, systems or equipment in any way."[30]  Hilton Worldwide also points out that 501EFA and Baywood both "admit to owning and operating the Hotel" in their answer.[31]

---

[26] R. Doc. 40-1 at 10.
[27] R. Doc. 41-1 at 6-8.
[28] *Id.* at 9.
[29] *Id.*
[30] *Id.* at 10.
[31] *Id.* (citing R. Doc. 10 at 5).

In his opposition to both motions, Lane argues that the motions and Smith's affidavit "are completely eclipsed by contradiction in the contracts and training documents relevant to the New Orleans Hotel where the underlying discrimination occurred."[32]  He contends that these documents establish sufficient minimum contacts with Louisiana such that Hilton is subject to specific personal jurisdiction here, and that these "contacts share a nexus with Plaintiff's claims."[33]  In particular, Lane argues that the documents establish minimum contacts between Hilton Franchise and Louisiana by requiring that Hilton Franchise approve the management company that operates the Hotel; retaining Hilton Franchise's rights to communicate directly with the management company, conduct quality-assurance inspections at the Hotel, and terminate the franchise for failure to comply with the Franchise Agreement or Hilton standards;[34] requiring the Hotel to operate according to Hilton's brand "System"; providing that Hilton Franchise collect monthly payments and other fees from the Hotel; and requiring that Hilton Franchise provide "Hilton brand training materials," including ADA compliance standards, to the Hotel.[35]  Lane contends that these contacts are "directly related to" his disability-discrimination claims because he "has alleged at every stage of this proceeding that the discrimination he faced was due to improper ADA training, improper application of ADA training, and/or improper oversight of ADA training application at the Hotel."[36]  As to Hilton Worldwide, Lane argues that it "propounded the Hotel's ADA compliance standards [which] the Hotel was contractually required to follow," and which state that "it is [Hilton's] own policy 'not to discriminate against any individual with a disability in the full and equal enjoyment of [its] goods, services, facilities, and accommodations'" and "that '[s]ervice

---

[32] R. Doc. 43 at 2.
[33] *Id.* at 4, 6.
[34] *Id.* at 4-5.
[35] *Id.* at 5-6 (citing R. Doc. 43-1 at 5, 7, 8, 12-13, 20-21, 30-31).
[36] *Id.* at 6 (citing R. Doc. 35 at 1-3).

animals that provide assistance to individuals with disabilities are welcome at all Hilton Worldwide brand hotels,' and include[] an extensive section on accommodating service animals."[37]  Lane further argues that "Hilton Worldwide mandated that the franchisee directly communicate with Hilton Worldwide about important elements" and that a senior paralegal for Hilton Worldwide "signed the Franchise Agreement."[38]  Lane also contends that the description of Hilton Franchise as "an Affiliate of Hilton Worldwide" in the introduction of the Franchise Agreement "and the understanding that Hilton Worldwide is the source of the Hotel's ADA compliance standards, together indicate that Hilton Worldwide retains some modicum of control over this franchise beyond the mere stock-keeping-only role it purports to hold."[39]  Lane asserts that these contacts between Hilton Worldwide and the forum are "directly related to [his] claims" because "Hilton Worldwide established the Hotel's ADA compliance standards," which he says "the Hotel's staff either does not know or fails to follow," thereby placing Hilton Worldwide's enforcement of such standards "squarely at issue," and the franchise documents establish that "Hilton Worldwide exercises some measure of control over this Hotel."[40]  Finally, Lane contends that the Court's analysis should be guided by *E.S. v. Best Western International, Inc.*, a "closely analogous" 2021 case in which a court in the Northern District of Texas "rejected a national hotel franchisor's argument that it lacked personal jurisdiction" where "the plaintiff alleged that Best Western 'owns, supervises, and/or operates the Best Western hotels' at the location where she was injured[;] received 'a percentage of the gross room revenue from the money generated by the

---

[37] *Id.* at 6-7 (quoting R. Doc. 43-3 at 5-6, 13, 60, 80) (emphasis omitted).
[38] *Id.* at 7-8 (citing R. Doc. 43-2 at 7-9).
[39] *Id.* at 8 (quoting R. Doc. 43-1 at 2).
[40] *Id.*

operations of all Best Western hotels' … while [the] plaintiff was injured"; and "contracted to supply services in Texas and caused indivisible injuries to the plaintiff in Texas."[41]

In reply, Hilton first argues that Lane's allegations that Hilton Franchise collects fees from the Hotel, approved the Hotel's management company, and retained certain rights through the Franchise Agreement "do not support personal jurisdiction" over Hilton Franchise.[42]  Hilton argues that "certain contractual relationships or provisions, such as franchising arrangements or quality control clauses, do not, by themselves, constitute purposeful availment sufficient to establish personal jurisdiction."[43]  It further argues that Lane "offers no evidence to rebut" the assertions contained in Smith's affidavit and that "[Hilton Franchise]'s role is that of a franchisor, not an operator, and these limited, contractual functions are insufficient to establish personal jurisdiction."[44]  Hilton also maintains that Hilton Worldwide is not subject to specific personal jurisdiction in Louisiana.  It contends that Lane's allegation that Hilton Worldwide signed the Franchise Agreement is "not true" and "appears to rest on the mistaken assumption that Dinky Turnage, a Senior Paralegal for [Hilton Worldwide], signed the franchise agreement based on the DocuSign Certificate of Completion."[45]  Hilton contends that Turnage had only an "administrative role in transmitting the agreement"[46] and notes that "[t]he only individuals who signed on the designated signature lines are Amit 'Al' Patel and John Shults" and that Turnage "was not provided with an electronic signature option, and there is no indication anywhere in the document that she executed the agreement."[47]  Hilton again points to Smith's affidavit, which states that Hilton

---

[41] *Id.* at 9 (citing *E. S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 433-34 (N.D. Tex. Jan. 4, 2021)).
[42] R. Doc. 44 at 1.
[43] *Id.* at 2 (citing *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020); *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 249 (5th Cir. 2019)).
[44] *Id.* at 2.
[45] *Id.*
[46] *Id.*
[47] *Id.* at 3.

Worldwide "is merely a holding company and the issuer of common stock, and … not a party to the franchise agreement."[48]  Hilton further argues that, even if Lane's allegation that Hilton Worldwide was a party to the Franchise Agreement were true, it "would still be insufficient to establish personal jurisdiction."[49]  Hilton contends that if Hilton Worldwide's provision of "system-wide ADA policies applicable to all Hilton-branded hotels … constitute[d] purposeful availment of Louisiana[, it] could be haled into court in any state whenever a local franchisee allegedly violated a Hilton-wide policy, a result the Supreme Court has warned against."[50]  It also argues that signing the Franchise Agreement "alone would not establish operational control or constitute conduct directed at the forum."[51]  Hilton maintains that Lane's reliance on *Best Western* is "misplaced," because the *Best Western* "court found specific jurisdiction based on well-pleaded allegations that the franchisor 'owned, supervised, or operated' the hotels at issue," whereas Lane "has not alleged, nor can he, that either [Hilton Franchise] or [Hilton Worldwide] owns, operates, manages, or controls the Hotel" and, "while *Best Western* involved allegations of profit-sharing directly tied to the alleged harm, [Hilton Franchise]'s collection of routine franchise royalties and program fees is categorically different and too attenuated to support specific jurisdiction."[52] Finally, Hilton contends that Lane "does not address or attempt to distinguish the case law cited by [Hilton] rejecting jurisdiction under nearly identical facts."[53]

---

[48] *Id.*
[49] *Id.*
[50] *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).
[51] *Id.*
[52] *Id.* at 4.
[53] *Id.*

8

## III.     LAW & ANALYSIS

### A. Rule 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking. Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotation and alteration omitted). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts must be resolved in favor of the plaintiff. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with due process under the United States Constitution. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Because Louisiana's long-arm statute extends to the limits of due process, the two inquiries collapse into the single inquiry whether the exercise of personal jurisdiction comports with due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

For purposes of personal jurisdiction, the due-process inquiry looks at whether the defendant has purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" with the forum, and whether the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945).  The inquiry thus focuses "on the nature and extent of the defendant's relationship to the forum State."  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation omitted).

"There are two kinds of personal jurisdiction: 'general or all-purpose jurisdiction' and 'specific or case-linked jurisdiction.'"  *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 215 (5th Cir. 2025) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  For a court to exercise general jurisdiction, the defendant's contacts with the forum must be "so continuous and systematic" as to render the defendant "at home" in the forum state.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Goodyear*, 564 U.S. at 919).  "'For an individual, the paradigm forum for the exercise of general jurisdiction is an individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 924).  Lane does not allege that Hilton is subject to general jurisdiction in Louisiana.[54]

"Specific personal jurisdiction 'covers defendants less intimately connected with a State, but only as to a narrower class of claims.'"  *Ethridge v. Samsung SDI Co.*, 137 F.4th 309, 314 (5th Cir. 2025) (quoting *Ford Motor Co.*, 592 U.S. at 359).  Specific jurisdiction exists when a defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action.  *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021).  In analyzing specific jurisdiction, courts employ a three-prong test to determine (1) whether the defendant purposefully directed its activities at the forum and availed itself of the privilege of doing business there, (2) whether the claim arises out of or results from the defendant's forum-related contacts,

---

[54] *See generally* R. Doc. 43.

and (3) whether the exercise of personal jurisdiction is reasonable and fair. *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895-96 (5th Cir. 2022). After the plaintiff establishes the first two factors, which correspond with the "minimum contacts" prong of *International Shoe*, the burden shifts to the defendant to demonstrate that an exercise of personal jurisdiction would be unfair or unreasonable. *Burger King Corp.*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). In determining reasonableness, a court considers "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987), as well as "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292. Specific jurisdiction is a claim-specific inquiry, and a court must analyze each defendant's forum-related contacts on a claim-by-claim basis. *Savoie v. Pritchard*, 122 F.4th 185, 194 (5th Cir. 2024); *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495-96, 500 (5th Cir. 2022) (separately analyzing personal jurisdiction for intentional tort claims and breach-of-contract claims); *see also Ecigrusa LLC v. Silver State Trading LLC*, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022).

## B. Analysis

In his third amended complaint, Lane alleges that Hilton Worldwide's "training and corporate standards document(s) apply to the Hotel employees that discriminated against Plaintiff" and that "[t]he Hotel staff is supposed to be trained and abide by [these] corporate standards and guidelines [and] comply with federal and state law on anti-discrimination, such as the ADA and LCHR" – though he does not allege that either Hilton Worldwide or Hilton Franchise was the

entity responsible for training the Hotel's staff.[55]  Lane further alleges that Hilton Worldwide's

ADA-compliance policy

> states [that], "[c]onsistent with the requirements of Title III of the Americans with
> Disabilities Act (ADA), it is Hilton's policy not to discriminate against any
> individual with a disability in the full and equal enjoyment of our goods, services,
> facilities, and accommodations" [and] goes on for several pages, expanding on
> [Hilton Worldwide]'s standards and guidelines with respect to ADA compliance,
> and how [Hilton Worldwide] ensures that individuals with disabilities are afforded
> the full and equal enjoyment of what Hilton hotels have to offer.[56]

Lane then alleges that certain "facts about and provisions within the Franchise Assignment …

further demonstrate [Hilton Worldwide]'s direct connection to this particular Hotel."[57]  With

respect to Hilton Franchise, Lane alleges that it, through the Franchise Agreement, "promised to

'specify certain required and optional training programs and to provide these programs at various

locations,'" and that the franchisee "was required to provide 'qualified and experienced

management'" for the Hotel, to be approved by Hilton Franchise, and that Hilton Franchise "is

entitled to 'Monthly Fees' from the franchisee from the revenue the Hotel generates."[58]

 As an initial matter, it appears that Lane's assertion that Turnage signed the Franchise

Agreement on behalf of Hilton Worldwide is mistaken, as Hilton argues in its reply.[59]  However,

---

[55] R. Doc. 35 at 1-2.

[56] *Id.* at 2 (quoting R. Doc. 35-3 at 6).

[57] *Id.* These alleged facts include the following: "[t]he introduction of the Franchise Agreement indicates that [Hilton Worldwide] 'controls' the franchisor, 'directly or indirectly'"; Hilton Worldwide is "the only Hilton entity" specifically defined in the Franchise Agreement; "[Hilton Worldwide] has specific rights and protections under the Franchise Agreement, such as the right to be fully indemnified; [t]he Franchise Agreement requires that the Hotel must be operated in accordance with the 'Standards' that may be supplied to the franchisee/assignee," including Hilton's ADA-compliance standards; Turnage, a Hilton Worldwide employee, "signed the Franchise Assignment, and provided his corporate email address"; the Franchise Agreement includes contact information for Hilton Worldwide and instructions for communicating certain information and requests to Hilton Worldwide; and "[t]he Franchise Assignment includes a provision that the assignee consents to receive documents and other materials from Hilton Worldwide." *Id.* at 2-3.

[58] *Id.* at 3.

[59] *See* R. Doc. 44 at 2.  The introduction to the agreement describes it as a "Franchise Agreement between Hilton Franchise Holding LLC … and the Franchisee."  R. Doc. 35-1 at 2.  And, as Hilton points out, the Franchise Agreement was only signed by a representative of Hilton Franchise and the franchisee, Amit N. Patel, a member of 501EFA who assigned his rights under the agreement to 501EFA on February 28, 2025.  *See* R. Docs. 35-1 at 32; 35-2.  There is no signature line for Turnage or any other Hilton Worldwide representative in the Franchise Agreement or the assignment.  *See* R. Docs. 35-1 at 32; 35-2 at 3.

even assuming that both Hilton Franchise and Hilton Worldwide were parties to the Franchise Agreement, this does not alter the outcome of the Court's analysis. "It is well established that 'merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction.'" *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (quoting *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 778 (5th Cir. 1986)). And, absent "clear evidence" of an alter-ego relationship – which Lane does not allege exists between either Hilton Franchise or Hilton Worldwide and the franchisee here[60] – "the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Id.* at 346. While a defendant's entering a long-term franchising agreement with a forum-state resident may constitute purposeful direction of its activities to the forum, *see Burger King Corp.*, 471 U.S. at 480, because Lane only argues that this Court has specific personal jurisdiction over Hilton, there must be "a connection between the forum and the specific claims at issue," *Bristol-Myers Squibb Co.*, 582 U.S. at 265, and "it is *the defendant's conduct* that must form the necessary connection with the forum State." *Walden*, 571 U.S. at 285 (emphasis added). Lane cannot establish the required connection between Hilton's alleged forum contacts, which are based entirely on the Franchise Agreement and Hilton's corporate policies, on the one hand, and his discrimination claims, on the other.

Because Lane is not a party to (or an intended third-party beneficiary of) the Franchise Agreement, his discrimination claims do not arise out of the Franchise Agreement. *See Madden v. Petland Summerville, LLC*, 2021 WL 288370, at *5 (D.S.C. Jan. 28, 2021) (explaining that the "plaintiffs' argument fails at the second prong [of the specific-jurisdiction test] because [the]

---

[60] Lane alleges that "[t]he Hotel is owned and managed by [Baywood] and/or 501EFA," R. Doc. 35 at 1, but 501EFA is the only franchisee identified in the Franchise Agreement and assignment. *See* R. Docs. 35-1 at 32; 35-2.

plaintiffs [were] not bringing suit on the basis of [the nonresident defendant-franchisor]'s franchise agreement [with a forum-resident franchisee] or its contractual obligations thereunder" but "[r]ather … alleged [that the franchisee sold] unhealthy puppies, actions far removed from [the defendant]'s franchise agreement contact," and distinguishing cases that "arose out of a dispute over the agreement at issue, and thus satisfied both the first and second prongs of the specific jurisdiction test"); *see also Doe v. Choice Hotels Int'l, Inc.*, 2025 WL 2108792, at *9 (D. Md. July 28, 2025) ("[The plaintiff] relies heavily, if not exclusively, upon [the nonresident franchisee-defendant]'s franchise agreement with [the forum-resident franchisor] as the key contact to establish relatedness.  [The plaintiff]'s claims against [the franchisee], however, do not directly arise from the franchise agreement in that [the plaintiff] does not allege a breach of that agreement.  This case is thus distinguishable from *Burger King* and *Econo Lodges*, in which specific jurisdiction was established over a franchisee in the franchisor's home state when the claims centered on breaches of the franchise agreements themselves." (discussing *Burger King Corp.*, 471 U.S. at 479-80, and *Econo Lodges Int'l, Inc. v. Peck*, 7 F.3d 223, 1993 WL 369262, at *1-2 (4th Cir. Sept. 22, 1993))); *Ra-Amari v. RE/MAX LLC*, 2023 WL 9231998, at *4 (S.D. Tex. Mar. 3, 2023) ("[T]he basis of [the p]laintiffs' claims are [alleged discriminatory] acts committed by [a forum-resident  franchisee], who[se] only connection to [the nonresident franchisor-defendant] is a franchise agreement that was not in effect at the time the alleged acts were committed.  To establish specific personal jurisdiction, the plaintiff must show how the claims 'arise out of or relate to the defendant's contacts with the forum.'  [The p]laintiffs fail to do so here as their claims do not arise out of [the franchisor-defendant]'s franchise agreement with [the franchisee]." (internal citation omitted) (quoting *Ford Motor Co.*, 592 U.S. at 358)).  Consequently, Lane argues that certain provisions of the Franchise Agreement establish the requisite nexus between his

discrimination claims and Hilton's contacts with Louisiana. This theory is unavailing. The purpose of the Franchise Agreement is to allow the franchisee "to obtain a license to use the [Hilton b]rand in the operation of" the Hotel.[61] "[A] non-exclusive license agreement alone is insufficient to trigger personal jurisdiction over the licensor." *Diece-Lisa Indus., Inc. v. Disney Store USA, LLC*, 2017 WL 8786932, at *3 (E.D. Tex. Dec. 19, 2017), *aff'd*, 943 F.3d 239, 253 (5th Cir. 2019). And the types of "quality control" provisions Lane relies on[62] are likewise insufficient to "trigger personal jurisdiction." *Id.* Lane has not alleged that Hilton acted as "something more" than the typical franchisor with respect to the Hotel, and thus has not demonstrated that Hilton exercises the requisite level of control over its Louisiana-based franchisee to establish personal jurisdiction over Hilton in Louisiana. *Id.*; *see also Diece-Lisa Indus.*, 943 F.3d at 253 n.14 (noting that "the actions of a typical licensor, such as exerting quality control over the licensee" are insufficient to allege that the defendant "was 'something more' than a mere licensor" whereas activities "such as sharing the right to litigate infringement cases with its licensees or controlling the licensee's sales" indicate "the level of control over [a franchisor's] licensees that might confer personal jurisdiction").

Neither do Lane's claims arise out of Hilton Worldwide's anti-discrimination policies. Lane does not allege that Hilton directed any discriminatory conduct toward Louisiana through these policies. To the contrary, he alleges that Hilton Franchise provided the franchisee with "Hilton's policy *not to discriminate* against any individual with a disability" and to welcome "[s]ervice animals that provide assistance to individuals with disabilities ... at all Hilton

---

[61] R. Doc. 35-1 at 2.
[62] *See* R. Doc. 43 at 3 (noting that "Hilton Franchise ... specifically approved the management company that runs the day-to-day operations at the Hotel [and] retains the right to conduct quality-assurance inspections of the Hotel, among other things").

Worldwide brand hotels."[63]   Nor does Lane allege that Hilton was responsible for training the Hotel employee in its anti-discrimination policies.[64]   He therefore seeks to attribute the conduct of a Hotel employee, who was not acting on Hilton's behalf and whose alleged conduct *did not comply* with Hilton's anti-discrimination policy, to Hilton for purposes of establishing personal jurisdiction in the forum where the alleged discrimination occurred.   As Hilton points out, to conclude that the existence of Hilton's ADA-compliance policy and a Franchise Agreement for a Louisiana hotel referencing that policy create sufficient minimum contacts between Hilton and Louisiana in this case would mean that Hilton could be "haled into court in any state whenever a local franchisee allegedly violated a Hilton-wide policy" in that state.[65]   This undermines the purposeful-availment requirement, which "ensures that a defendant will not be haled into a jurisdiction solely as a result of … the 'unilateral activity of another party or a third person.'"   *See Burger King Corp.*, 471 U.S. at 475 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)); *see also Doe*, 2025 WL 2108792, at *9 ("[T]he Court does not agree that when a franchisee acts in relation to its own hotel not in accordance with a franchise agreement or franchisor's policy, but contrary to such a policy …, claims based on the franchisee's conduct must be deemed to arise from or relate to the franchise agreement or policy.").   The Hotel employee's alleged discriminatory conduct toward Lane is simply too attenuated from Hilton's policies and its contractual relationship with the Hotel's franchisee to confer personal jurisdiction.

Lane's reliance on the *Best Western* court's reasoning is indeed misplaced.   The plaintiff in *Best Western* alleged that she was trafficked at certain hotels in Texas and that the defendants,

---

[63] R. Doc. 35-3 at 6 (emphasis added).
[64] Lane simply alleges that "[t]he Hotel staff is supposed to be trained and abide by corporate standards and guidelines from [Hilton Worldwide and] to comply with federal and state law on anti-discrimination," without specifying by whom they were to be trained.  R. Doc. 35 at 1-2.
[65] R Doc. 44 at 3.

including Best Western International, Inc. ("Best Western")*,* a nonresident franchisor, and its Texas-based franchisees, had beneficiary liability under the Trafficking Victims Protection Reauthorization Act. *See Best Western*, 510 F. Supp. 3d at 424-25. The court determined, after holding that the plaintiff had sufficiently alleged that the defendants "knowingly benefitted" from the trafficking venture, and construing the complaint in the light most favorable to the plaintiff, that the complaint contained "sufficient allegations to indicate Best Western has minimum contacts with Texas," including that "'Best Western owns, supervises, and/or operates the Best Western hotels'" where the plaintiff alleged she was trafficked, "received 'a percentage of the gross room revenue from the money generated by the operations of all Best Western hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was sex trafficked'" and "'operates dozens of hotels in Texas, including the Best Western locations [where the plaintiff was allegedly trafficked], contracts to supply services in Texas, caused indivisible injuries to the [p]laintiff in Texas, and profited from an illegal sex trafficking venture at multiple Best Western locations in the state of Texas." *Id.* at 433-34 (quoting operative complaint in that case). By contrast, Lane's third amended complaint does not allege that Hilton "owns, supervises, and/or operates" the Hotel, and, even if it did, such an allegation would be controverted by Smith's attestation that "[n]either [Hilton Franchise] nor [Hilton Worldwide] owns, operates, manages, controls, or has any involvement in the day-to-day operations of the Hotel[, or] employs the personnel working at the Hotel nor controls or supervises the staff at the Hotel."[66] And while the plaintiff in *Best Western* alleged that the franchisor received a percentage of the franchise hotel's revenues, including the charges for the rooms where she was allegedly trafficked, no such direct profit connection can be drawn from Lane's claimed injury here – which

---

[66] R. Doc. 40-2 at 2.

resulted from the alleged interaction between him and the Hotel employee, rather than Lane's rental of a hotel room – and the "monthly fees" Lane alleges that Hilton Franchise collects from the Hotel under the Franchise Agreement.[67]  And, importantly, while Lane contends that *Best Western* is "closely analogous" to the instant case,[68] other district courts have found specific personal jurisdiction over nonresident franchisors lacking in discrimination cases with facts much more similar to those alleged by Lane here and where the defendant-franchisors (including, in one case, Hilton Franchise) made nearly identical arguments as those raised by Hilton here.  *See Perryman v. Hotel Wetumpka AL, LLC*, 677 F. Supp. 3d 1298, 1303 (N.D. Ala. 2023) (holding that, "[i]n the absence of evidence refuting [defendant Hilton Franchise and its parent company, Hilton Domestic Operating Company]'s evidence concerning their lack of control over the operations of [the franchisee's hotel], the [plaintiffs] have not carried their burden to establish that a federal court in the Northern District of Alabama may exercise specific jurisdiction over the Hilton defendants in this [race-discrimination] case"); *Willock v. Hilton Domestic Operating Co.*, 474 F. Supp. 3d 938, 950 (M.D. Tenn. 2020) ("[The plaintiff] has failed to demonstrate specific personal jurisdiction over Hilton Domestic [Operating Company] with regard to his [race-discrimination] claims in this case.  *The only role for Hilton Domestic in the underlying events was entering into a franchise agreement* and connecting [the plaintiff], though its website, with his hotel room.  Those contacts might be sufficient to support personal jurisdiction with regard to some cause of action, but *these [discrimination] causes of action involve events too distant from Hilton Domestic's involvement to permit this court to consider the claims against it.*" (emphasis added)).

---

[67] R. Doc. 35 at 3.
[68] R. Doc. 43 at 9.

**IV.    CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motions to dismiss for lack of personal jurisdiction filed by Hilton Franchise (R. Doc. 40) and Hilton Worldwide (R. Doc. 41) are GRANTED, and Lane's claims against Hilton Franchise and Hilton Worldwide are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 21st day of August, 2025.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE